PEOPLE ex rel. JOLINE et al. v. STATE BOARD OF TAX COM'RS.

(Supreme Court, Special Term, New York County. November 27, 1912.)

1. TAXATION (§ 376*)—CORPORATIONS—SPECIAL FRANCHISE TAX—"NET EARNINGS RULE."

The "net earnings rule" applicable to the determination of the special franchise tax of a street railway company contemplates a valuation on the basis of net earnings of the corporation which are attributable to its enjoyment of the special franchise, and is applied by ascertaining the gross earnings and deducting operating expenses and a fair and reasonable return of the portion of the corporation's capital invested in tangible property.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

2. TAXATION (§ 376*) — STREET RAILROAD COMPANIES — SPECIAL FRANCHISE TAX—EXPENDITURES FOR IMPROVEMENTS AND BETTERMENTS—"OPERATING EXPENSE."

Expenditures by street railroad company for improvements and betterments properly belong to capital and should not be charged to "operating expenses" in determining the corporation's net earnings for the purpose of ascertaining the value of the corporation special franchise for taxation, though the cost of changing curves in the tracks and other special work of that character, not generally classified as additions to capital, might be properly charged as an operating expense.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*

For other definitions, see Words and Phrases, vol. 6, p. 4992.]

3. TAXATION (§ 376*)—STREET RAILROADS—FRANCHISE TAX—RENEWALS AND REPLACEMENTS—"OPERATING EXPENSE."

Where, in determining the net earnings of a street railway company for the assessment of a special franchise tax, a deduction for depreciation is allowed, the amount spent for renewals and replacements should be excluded and not charged as an "operating expense."

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

4. TAXATION (§ 376*)—STREET RAILROAD COMPANIES—SPECIAL FRANCHISE TAX—INCOME DERIVED FROM OPERATION.

Rents received by relator from another corporation for the use of cars and horses owned by relator constituted income derived from the operation of relator's franchise and should be considered in determining relator's net earnings for the purpose of valuing such franchise for the taxation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

5. TAXATION (§ 376*)—STREET RAILROADS—INTEREST ON DEPOSITED FARES—"OPERATING INCOME."

Interest received by street railroad company on fares collected and deposited in a bank during the period between the receipt of the fare and its disbursement for operating expenses constituted a part of the com-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pany's "operating income" and should be considered in valuing its franchise for special taxation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

6. TAXATION (§ 376*)—STREET RAILROADS—SPECIAL FRANCHISE TAX—GROSS INCOME—DEDUCTIONS—"OPERATING EXPENSE."

A street railroad in a proceeding to determine its net earnings for taxation of its special franchise was not entitled to deduct from its gross income a percentage of gross receipts paid to the city, stipulated rents and car license fees paid to the city nor bridge tolls, since such items are to be deducted from the actual tax as finally paid and refunded, as expressly provided by Tax Law (Consol. Laws, c. 60) § 48, and hence cannot be regarded as an "operating expense."

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

7. TAXATION (§ 376*)—STREET RAILROADS—SPECIAL FRANCHISES—NET INCOME—TANGIBLE PROPERTY.

. Where, in proceedings to assess a special tax on a street railroad company, the value of the company's tangible property in and out of the streets has been determined, the company is entitled to deduct from a total net income a fair return of the value of such tangible property.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

8. TAXATION (§ 376*)—STREET RAILROADS—SPECIAL FRANCHISE TAX—TANGIBLE PROPERTY—VALUE.

Where, in proceedings to assess a special franchise tax against a street railroad company, it appeared that among the company's tangible property were certain horse tracks and roadways valued at $662,795, but that 46.39 per cent. of such tracks and ways were not used for any franchise purpose and produced no revenue, the city was entitled to have such value reduced to $383,336 in determining its tangible property valuation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

9. TAXATION (§ 376*)—STREET RAILROADS—SPECIAL FRANCHISE TAX—NET INCOME.

A street railroad company was not entitled to a deduction from total net income of income on the present value of unused tracks in determining the value of the company's special franchise for taxation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

10. TAXATION (§ 376*)—STREET RAILROADS—SPECIAL FRANCHISE TAX—TANGIBLE PROPERTY—VALUATION.

Where, in proceedings to determine the value of a special franchise of a street railway, the present value of its track and highway was sought to be ascertained by estimating the cost of reproduction and depreciating the same according to established rules, the company was entitled to include in such cost the fees of consulting or chief engineer's profits of general contractors, and the interest and taxes during the construction period, provided it is fairly inferable from the evidence that such expenditures were actually made.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

11. TAXATION (§ 376*)—STREET RAILROAD COMPANY—SPECIAL FRANCHISE TAX—TANGIBLE PROPERTY.

In determining the value of tangible property of a street railroad company for assessment of a special franchise tax, the items of cash on hand,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the value of the property rented to other companies, and the value of the land used by the company itself should be included as tangible property.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

**12. TAXATION (§ 376*)—STREET RAILROADS—SPECIAL FRANCHISE TAX—INCOME —RETURN ON COST OF STREET PAVING.**

Since under Railroad Law (Consol. Laws, c. 49) § 98, a street railroad company is compelled to pave the area between its tracks and a strip two feet wide immediately outside thereof and to maintain the pavement there laid, the expenditure being required by law, the railway company is entitled to a return thereon, and hence should only be required to pay a special franchise on such item to the extent of the added value of its property in the street by the presence of the pavement.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

**13. TAXATION (§ 376*)—STREET RAILROADS—SPECIAL FRANCHISE TAX—TAN-GIBLE PROPERTY.**

Where, in proceedings to determine the value of the special franchise of a street railroad company for taxation, the value of the company's tangible property on and off the streets has been determined, the company is entitled to deduct from its total net income six per cent. of that value as a fair return thereon, and the remaining net income will be deemed attributable to the company's tangible property, and, this being capitalized at 6 per cent., the result will be the value of the company's intangible right, and the total of the value of such intangible right and the present value of the intangible property in the streets will constitute the value for assessment of the special franchise.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

Certiorari by the People, on relation of Adrian H. Joline and another, as receivers of the Metropolitan Street Railway, to review an assessment of the special franchise of the railway company for taxation for the year 1911.   Modified.

See, also, 159 App. Div. 136, 144 N. Y. Supp. 74.

Arthur H. Masten, William Coleman, and Alfred Ely, Jr., all of New York City, for relators.

William McQuaid, Atty. Gen., for State Board of Tax Com'rs.

Curtis A. Peters and Addison B. Scoville, both of New York City, for city of New York.

DAVIS, J.   These proceedings are brought under section 46 of the Tax Law (Consol. Laws, c. 60) by the relators to review assessments for taxation of special franchises of the Metropolitan Railway Company and its subsidiary roads for the year 1911, made by the State Board of Tax Commissioners.   The total of assessments as laid is $49,-057,000:   At the rate of 1.72248, the tax for 1911 amounts to $844,-997.02.   The writs of certiorari commanded the respondents to include in their return a specific statement as to the modus operandi by which they arrived at the assessment made by them.   The return, however, fails to give information from which the court can conclude that the respondents acted in accordance with any rule whatever. Therefore, after full consideration of the matter, aided by the valuable briefs of counsel, I have decided that the case is one in which the court ought to examine into and test the fairness of the assessment to see if it is justified by the principles adopted in assessing this kind of property, as laid down in recently decided cases.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[1] ·The "net earnings rule" has been applied in similar inquiries with the approval of the Court of Appeals. People ex rel. Jamaica Water Supply Co. v. Tax Com'rs, 196 N. Y. 39, 89 N. E. 581. It will be applied here as being peculiarly appropriate to the special circumstances and likely to result in a fair assessment. In the language of Judge Bartlett:

"The net earnings rule contemplates a valuation upon the basis of the net earnings of the corporation which are attributable to its enjoyment of the special franchise. The method is thus applied: (1) Ascertain the gross earnings. (2) Deduct the operating expenses. (3) Deduct a fair and reasonable return on that portion of the capital of the corporation which is invested in tangible property. The resulting balance gives the earnings attributable to the special franchise. If this balance be capitalized at a fair rate, we have the value of the special franchise."

Here I find the gross earnings from fares to be $12,872,755.71. In estimating gross earnings the cash fares received from the operation of the local cars on the Williamsburgh Bridge have been excluded, as they appear to me not to be the result of the operation of any of the special franchises of the relator companies.

[2, 3] We next consider the claims as to the operating expenses of relator. In Exhibit 187 the relator claims that the operation expenses for year ending December 31, 1910, were between $8,000,000 and $9,-000,000. In this amount are included expenditures for improvements and betterments. Such expenditures properly belong to capital account, and are therefore to be excluded from operating expenses. But it is proper to include in operating expenses the sum of $61,006.63 (Exhibit B), representing the cost of changing curves in tracks and other special work of like character not generally classified as additions to capital. The amounts spent for renewals and replacements will also be excluded, inasmuch as a proper deduction from the net earnings will be allowed for depreciation. As the cash fares received from the operation of the local cars over the Williamsburgh Bridge have been excluded from the gross earnings, the expenses of operating those cars will be deducted from operating expenses. The difference between the gross earnings and the operating expenses is the net earnings from operation. The relator, however, was in receipt of other income, attributable to the enjoyment of its franchise, which should be added to these net earnings.

[4, 5] The relator claims that rents received by it from the Central Park, North & East River Railroad Company for the use of cars and horses owned by the relator should not be included in the item of income derived from the operation of its franchise. On this point the finding must be against the relator, as the cars and horses are manifestly a part of the property used by the relator in the exercise of its franchise. The interest on bank balances, amounting to $34,655.38, should also be included in the income. This interest is paid on the operating cash of the relator. It is not the return from an investment. It is interest on the deposited fares. We may regard each fare as being worth somewhat more than its face value, the additional value being represented by the interest earned by·it in the banks during the period between the date of the receipt of the fare and the disbursement of it for expenses of operation. The receipts from advertising

in the local bridge cars will be excluded from income. In order to arrive at the final net income, certain deductions should be made from the gross income.

The relator claims the right to deduct the following: (1) Special franchise tax already paid for 1910, amounting to $300,000; (2) percentage of gross receipts paid to the city, amounting to $221,212.97; (3) stipulated rents paid to the city, $41,000; (4) car license fees paid to the city, amounting to $39,980; (5) amount paid as bridge tolls for through cars on Williamsburgh Bridge, $22,775.90. The city concedes the right to deduct the first item ($300,000), but contests the claim to deduct the other items. I think the city's position is right.

[6] Under section 48 of the Tax Law, the disputed items must be deducted from the actual tax as finally laid. Therefore they should not be treated as operating expenses. The money so paid is ultimately refunded under section 48. If these items were included in the operating expenses, it would make a material reduction in the tax. Thus these items would be used to effect a twofold reduction in the tax, one before the fixing of the tax and the other after. It cannot be an expense to the relator if the state reimburses the relator for the payment. Such seems to be the view taken by the court in the case of Heerwagen v. Crosstown Co., 179 N. Y. 99–106, 71 N. E. 729. The amount to be deducted from net income to cover depreciation is fixed at $1,665,934.16. The amount of the net income derived from both tangible and intangible property thus having been determined, it becomes necessary to fix the present value of the tangible property in and out of the streets.

[7] This value being determined, the relator should be allowed to deduct from its total net income as above ascertained a fair return on the value of that tangible property.

[8] Among the properties of the relator are various horse tracks and roadways, the present value of which is claimed to be $662,795 (Exhibit 197). The city claims that this value should be reduced to $371,165.20, because, as admitted by relator, about 46.39 per cent. of these horse tracks and roadways is not used for any franchise purpose and is not producing any income (minutes, pp. 265, 266). The city's claim seems reasonable. The amount will be reduced to $383,336 (see relator's Exhibit 237). The object of deducting from the total net income a return on the value of the tangible property is to identify the earnings properly attributable to the intangible property. Under the evidence it is obvious that these unused tracks contribute nothing to the amount of the total net income.

[9] It seems reasonable that there should be no deduction from total net income so far as the present value of those unused tracks and roadways is concerned.

[10] The relator seeks to include in the present value of its property in the street $5,030,507, to cover cost of engineering, interest, and taxes during the construction period. This amount is given by the expert Ubelacker as a fair estimate of that cost. The relator's expert (Starrett) testified that the present value of the electric track

and railway is $12,142,033. He arrived at the result by ascertaining the estimated cost to reproduce new as of January 9, 1912, considering each line separately, and then he depreciated the work to well-established rules, and so reached his estimate of present value (Min. p. 132, and Exhibit 200). The relator claims that Starrett did not include the cost of engineering, interest and taxes during construction in his estimate of present value. The testimony being vague on this point, the proceeding was reopened to take further testimony. I am satisfied now that Starrett omitted from his estimate certain expenses necessarily incurred in a vast railroad project like the one in question. For instance, while he included the cost of field engineering, he did not include the cost of consulting engineers or chief engineers. Nor did he include anything for profits of general contractors or for interest and taxes during the construction period. All of these items should be considered in making a complete estimate of the cost of reproducing a railroad system like the relator's. But it must be fairly inferable from the evidence that such expenditures actually were made before they are incorporated in the estimate. In this case I think the evidence shows that there were expenditures for interest during the period of construction, for incidentals, for general contractors' profits and for engineering and taxes, not included in the estimate of Mr. Starrett. I think the following would be proper allowances to cover these items upon a basis of present value: For property not in the street, $1,661,238, and for property in the street, $2,705,606. In the starting of these railroad organizations there were certain preliminary expenses, always incident to enterprises of this kind, and upon which the relator should be allowed some return. I have estimated these expenses to be $2,098,069, a much smaller amount than claimed by the relator. Under the evidence it is safe to say that at least this amount was expended for organization purposes.

[11] The item of cash on hand, amounting to $1,239,522, should be included as part of the tangible property. See People ex rel. Man. Ry. v. Woodbury, 203 N. Y. 231–234, 96 N. E. 420. The value of the property rented to the Central Park Company, amounting to $29,759, should also be included as part of the tangible property. The relator claims that the full value of its land No. 535 West Fifty-Third street and No. 542 West Fifty-Fourth street should be included in its tangible property. The valuation of $17,500 is not disputed, but the city contends that only 50 per cent. of it should be allowed. I see no reason for any deduction here from the full value of $17,500. The value of the property on Sixth and Seventh avenues, between Fiftieth and Fifty-First streets, is fixed at $2,-752,840. The value of the property Nos. 814–828 Eighth avenue, assuming 72 per cent. of use, is fixed at $198,792. The value of the property on Madison avenue, Eighty-Fifth to Eighty-Sixth streets, is fixed at $1,000,000. In addition to the land values already mentioned, the relator claims values amounting to $2,299,167, to represent cost of acquisition of the land in question. There is no evidence to justify this addition. The claim is speculative and must be

disallowed. The case of Shepard v. Northern Pac. Ry. (C. C.) 184 Fed. 765, is authority for such additional value where the evidence shows that extra amounts were paid for the property above its normal market value, but not, as here, where there is no evidence of such payment. Under section 98 of the Railroad Law (Consol. Laws, c. 49), the relator is compelled to pave the area between its tracks and a strip two feet in width immediately outside of its tracks, and to maintain the pavement where laid. For this reason it claims to be entitled to a return upon this necessary expenditure, but it denies the right of the state to consider the value of this pavement in estimating the value of its tangible property for purposes of assessment. On the other hand, the defendant contends that the cost of the pavement is an essential part of the cost of reproducing new the relator's tangible property in the street in the same way as is the cost of the rails, ducts and feeders, and for that reason should be considered in fixing the amount of the tangible property to be taxed.

[12] It seems clear that, being an expenditure made necessary by law, the relators are entitled to a return upon it, and I so hold. Should the relators be taxed upon this cost? It is well established that title to the pavement when laid is in the municipality and not in the relator. But there can be no doubt that the presence of the pavement gives an additional value to the rails, ducts, feeders, etc., as a completed plant. If this be so, any valuation of the tangible property which disregards the cost of the pavement would be incomplete to that extent. I therefore hold that the relator should pay a tax upon the added value caused by the presence of the pavement. See People ex rel. N. F., etc., Co. v. Tax Com'rs, 202 N. Y. 426, 95 N. E. 754.

[13] Having determined the value of the tangible property on and off the streets, the relators are allowed to deduct from the total net income 6 per cent. of that value, which is a fair return thereon. The remaining net income will be deemed to be attributable to the intangible property of relator and will be capitalized at 6 per cent.; the result being the value of the intangible right. The total of the value of the intangible right and the present value of the intangible property in the streets will be the value for assessment of the special franchise. Thus:

Value of intangible right is..................................... $12,027,233
Value of tangible property in streets is.......................... 20,276,221

Assessed value of special franchise is..................... $32,303,454

This latter amount will be distributed proportionately among the various relator companies on the basis of the present value of the property of each in the streets and then equalized at 93 per cent. The results will be the assessments upon each company as herein found by the court. The parties will please make these arithmetical calculations and present them to the court in the form of appropriate findings. The relator and the defendant have submitted many requests for findings, all of which have been passed upon. In many instances I have arrived at conclusions differing from both those of the

relator and those of the defendant. In order to make clear the court's findings, they are set out in full as follows, supplementing the findings as they appear on the printed requests submitted:

### SUMMARY COVERING WHOLE METROPOLITAN SYSTEM.

| | |
|---|---:|
| Gross revenue from fares.................................... | $12,872,755 |
| Rental of cars to Central Park Co......................... | 32,543 |
| Interest on bank balances................................... | 34,655 |
| | $12,939,954 |
| Less operating expenses..................................... | 7,049,079 |
| Net earnings from operation............................... | $5,823,676 |
| Other income to be added.................................. | 478,101 |
| Total net income.......................................... | $6,301,777 |
| Less certain taxes and rents.............................. | 842,687 |
| Net income from tangible and intangible property.............. | $5,459,090 |

Present value of tangible property on streets..$20,276,221
Present value of tangible property off streets.. 28,995,059

| | | |
|---|---:|---:|
| Total of tangible property...................$49,271,280 | | |
| Six per cent. on tangible property.....................$2,956,276 | | |
| Six per cent. on preliminary expenses of organization, which are estimated at $2,098,069.................... | 125,885 | |
| Depreciation ......................................... | 1,655,295 | |
| | | 4,737,456 |
| Amount of income attributable to intangible right................. | | $721,634 |
| Latter capitalized at six per cent., value of intangible right........ | | 12,027,233 |
| Add tangible property in streets............................... | | 20,276,221 |
| Value of special franchise................................... | | $32,303,454 |

*Cost to Produce New the Tangible Property on the Streets Belonging to the Whole Metropolitan System.*

| | |
|---|---:|
| Electric track and roadway | $17,124,041 |
| Ducts ..................... | 2,259,955 |
| Feeders .................. | 3,297,833 |
| Fourth Avenue tunnel..... | 470,947 |
| Horse track and roadway.. | 589,677 |
| Engineering, interest, etc. (see findings) | |

*Present Value of Same.*

| | |
|---|---:|
| Electric track and roadway | $12,142,033 |
| Ducts ..................... | 2,259,955 |
| Feeders .................. | 2,314,344 |
| Fourth Avenue tunnel...... | 470,947 |
| Horse track and roadway.. | 383,336 |
| Engineering, interest, etc... | 3,236,911 |

*Cost to Produce New the Tangible Property off the Streets.*

| | |
|---|---:|
| Land ...................... | $9,096,032 |
| Buildings ................. | 7,221,489 |
| Tracks in buildings........ | 488,166 |
| Power and shop machinery | 4,391,257 |
| Harness, wagons, etc....... | 381,854 |
| Cars ...................... | 8,240,676 |
| Horses ................... | 203,984 |
| Supply parts.............. | 312,151 |
| Materials and supplies.... | 967,210 |
| Cash, accounts receivable.. | 1,239,522 |
| Initial franchise payment (see findings)........... | 151,000 |
| Engineering, interest, etc. (see findings) | |

*Present Value of Same.*

| | |
|---|---:|
| Land ...................... | $9,096,032 |
| Buildings ................. | 6,570,578 |
| Tracks in buildings........ | 440,518 |
| Power and shop machinery | 3,441,491 |
| Cars ...................... | 4,814,577 |
| Horses ................... | 109,815 |
| Supply parts.............. | 312,151 |
| Materials and supplies..... | 967,210 |
| Harness, wagons, etc...... | 190,927 |
| Cash, accounts receivable.. | 1,239,522 |
| Initial franchise payment.. | 151,000 |
| Engineering, interest and taxes ................... | 1,649,181 |

### METROPOLITAN ALONE.

*Cost to Produce New Tangible Property on Streets.*

| | |
|---|---:|
| Electric track and roadway | $4,747,347 |
| Ducts ..................... | 589,816 |

Feeders ................... 1,649,384
Horse track and roadway.. 424,416
Engineering, interest, etc... 1,285,608

*Present Value of Same.*

Electric track and roadway $3,431,659
Ducts .................... 589,816
Feeders .................. 1,173,148
Horse track and roadway.. 299,303
Engineering, interest, etc... 1,002,794

*Cost to Produce New Tangible Property Outside of Streets.*

Land ..................... $4,638,883
Buildings ................ 3,955,323
Cars, including Central Park 7,899,343
Horses, including Central Park .................... 250,096
Machinery and tools....... 4,391,257
Tracks in buildings....... 297,483
Materials, stores and supplies ................... 1,279,361
Furniture and fixtures..... 381,854
Cash, accounts receivable.. 1,239,522
Initial franchise payment.. 1,000
Engineering, interest, etc... 1,525,612

*Present Value of Same.*

Land ..................... $4,638,883
Buildings ................ 3,746,074
Cars, including Central Park 4,521,363
Horses, including Central Park .................... 121,867
Machinery and tools....... 3,441,491
Tracks in buildings....... 284,348
Materials, stores and supplies ................... 1,279,361
Furniture and fixtures..... 190,927
Cash, accounts receivable.. 1,239,522
Initial franchise payment.. 1,000
Engineering, interest, etc... 1,255,000

TWENTY-THIRD STREET RAILWAY.

*Cost to Produce New Tangible Property on Streets.*

Electric track and roadway $755,442
Ducts .................... 84,244
Feeders .................. 40,385
Horse track and roadway.. (nothing)
Engineering, etc.......... 151,234

*Present Value of Same.*

Electric track and roadway $515,585
Ducts .................... 84,244
Feeders .................. 28,683
Horse track and roadway.. (nothing)
Engineering, etc.......... 113,658

*Cost to Produce New Tangible Property off Streets.*

Land ..................... $30,000
Buildings ................ 17,055
Tracks in buildings....... 19,603
Engineering, etc.......... 5,106
Initial franchise payment.. 150,000

*Present Value of Same.*

Land ..................... $30,000
Buildings ................ 13,896
Tracks in buildings........ 18,390
Engineering, etc.......... 5,204
Initial franchise payment.. 150,000

THIRTY-FOURTH STREET CROSSTOWN RAILWAY.

*Cost to Produce New Tangible Property on Streets.*

Electric track and roadway $140,402
Ducts .................... 5,648
Feeders .................. 12,498
Engineering, etc........... 25,824

*Present Value of Same.*

Electric track and roadway $111,548
Ducts .................... 5,648
Feeders .................. 10,000
Engineering, etc........... 21,466

*Cost to Produce New Tangible Property off Streets.*
(Nothing.)

SIXTH AVENUE RAILROAD.

*Cost to Produce New Tangible Property on Streets.*

Electric track and roadway $1,448,891
Ducts .................... 310,753
Feeders .................. 144,663
Horse track and roadway.. 39,856
Engineering, etc........... 326,185

*Present Value of Same.*

Electric track and roadway $959,943
Ducts .................... 310,753
Feeders .................. 94,051
Horse track and roadway.. 22,059
Engineering, etc........... 240,781

*Cost to Produce New Tangible Property off Streets.*

Land ..................... $175,000
Buildings ................ 336,372
Tracks in buildings........ 39,193
Engineering, etc........... 21,056

*Present Value of Same.*

Land ..................... $175,000
Buildings ................ 302,735
Tracks in buildings........ 36,757
Engineering, etc........... 21,210

NINTH AVENUE RAILROAD.

*Cost to Produce New Tangible Property on Streets.*

Electric track and roadway $1,710,686
Ducts .................... 130,701
Feeders .................. 250,034
Horse track and roadway.. (nothing)
Engineering, etc........... 356,058

*Present Value of Same.*

Electric track and roadway $1,246,955
Ducts ..................... 130,701
Feeders .................. 179,054
Horse track and roadway.. (nothing)
Engineering, etc........... 274,713

*Cost to Produce New Tangible Property off Streets.*

Land ..................... $42,000
Buildings ................. 3,292
Tracks in building........ (nothing)
Engineering, etc.......... 2,768

*Present Value of Same.*

Land ..................... $42,000
Buildings ................. 2,403
Tracks in building........ (nothing)
Engineering, etc........... 2,660

NEW YORK & HARLEM RAILROAD COMPANY.

*Cost to Produce New Tangible Property on Streets.*

Electric track and roadway $2,807,426
Ducts ..................... 435,617
Feeders .................. 337,881
Fourth avenue tunnel..... 470,947
Horse track and roadway.. (nothing)
Engineering, etc.......... 741,005

*Present Value of Same.*

Electric track and roadway $1,923,783
Ducts ..................... 435,617
Feeders .................. 245,641
Fourth avenue tunnel..... 470,947
Horse track and roadway.. (nothing)
Engineering, etc........... 630,109

*No Property off Streets.*

FORTY-SECOND STREET & GRAND STREET FERRY RAILROAD.

*Cost to Produce New Tangible Property on Streets.*

Electric track and roadway $634,564
Ducts ..................... 30,243
Feeders .................. 103,087
Horse track and roadway.. (nothing)
Engineering, etc.......... 136,923

*Present Value of Same.*

Electric track and roadway $472,384
Ducts ..................... 30,243
Feeders .................. 83,091
Horse track and roadway.. (nothing)
Engineering, etc........... 106,509

*Cost to Produce New Tangible Property off Streets.*

Land ..................... $281,000
Buildings ................ 200,948
Tracks in buildings........ 29,359
Engineering, etc........... 21,377

*Present Value of Same.*

Land .................... $281,000
Buildings ................ 198,939
Tracks in buildings........ 26,717
Engineering, etc........... 20,100

FORT GEORGE AND ELEVENTH AVENUE RAILROAD.

*Cost to Produce New Tangible Property on Streets.*

Electric track and roadway $226,221
Ducts ..................... 35,219
Feeders .................. 14,500
Engineering, etc.......... 46,453

*Present Value of Same.*

Electric track and roadway $154,664
Ducts ..................... 35,219
Feeders .................. 11,780
Engineering, etc.......... 35,219

*No Property Outside of Streets.*

EIGHTH AVENUE RAILROAD.

*Cost to Produce New Tangible Property on Streets.*

Electric track and roadway $2,062,931
Ducts ..................... 233,170
Feeders .................. 428,564
Horse track and roadway.. 1,405
Engineering, interest, etc... 457,951

*Present Value of Same.*

Electric track and roadway $1,561,033
Ducts ..................... 233,170
Feeders .................. 278,582
Horse track and roadway.. 948
Engineering, interest, etc... 361,146

*Cost to Produce New Tangible Property off Streets.*

Land ..................... $970,000
Buildings ................. 242,698
Tracks in buildings........ 15,591
Engineering, etc........... 68,127

*Present Value of Same.*

Land ..................... $970,000
Buildings ................. 175,625
Tracks in buildings........ 11,140
Engineering, etc.......... 60,500

CHRISTOPHER & FOURTH STREET RAILWAY COMPANY.

*Cost to Produce New Tangible Property on Streets.*

Electric track and roadway $621,044
Ducts ..................... 40,249
Feeders .................. 63,639
Horse track and roadway.. (nothing)

Engineering, etc., during construction ............ 123,730

### Present Value of Same.

| | |
|---|---|
| Electric track and roadway | $418,162 |
| Ducts ..................... | 40,249 |
| Feeders ................... | 47,688 |
| Horse track and roadway | (nothing) |
| Engineering during construction ............... | 89,519 |

### Cost to Produce New Tangible Property off Streets.

| | |
|---|---|
| Land ..................... | $3,967 |
| Buildings ................ | 1,582 |
| Tracks in building........ | (nothing) |
| Engineering, etc........... | (nothing) |

### Present Value of Same.

| | |
|---|---|
| Land ...................... | $3,967 |
| Buildings. ................ | 1,029 |
| Tracks in building........ | (nothing) |
| Engineering, etc........... | (nothing) |

### CENTRAL CROSSTOWN RAILWAY COMPANY.

### Cost to Produce New Tangible Property on Streets.

| | |
|---|---|
| Electric track and roadway | $135,964 |
| Ducts ..................... | 6,139 |
| Feeders ................... | 11,395 |
| Horse tracks and roadway | 37,576 |
| Engineering, etc........... | 33,885 |

### Present Value of Same.

| | |
|---|---|
| Electric track and roadway | $99,599 |
| Ducts ..................... | 6,139 |
| Feeders ................... | 9,117 |
| Horse track and roadway.. | 15,045 |
| Engineering, etc., during construction ............ | 23,389 |

### Cost to Produce New Property off Streets.

| | |
|---|---|
| Cars ..................... | $341,334 |
| Engineering, etc.......... | (nothing) |

### Present Value of Same.

| | |
|---|---|
| Cars ..................... | $293,214 |
| Engineering, etc.......... | (nothing) |

### BROADWAY & SEVENTH AVENUE RAILWAY COMPANY.

### Costs to Produce New Tangible Property on Streets.

| | |
|---|---|
| Electric track and roadway | $1,526,833 |
| Ducts ..................... | 337,476 |
| Feeders ................... | 156,507 |
| Horse track and roadway.. | 20,235 |
| Engineering etc........... | 367,437 |

### Present Value of Same.

| | |
|---|---|
| Electric track and roadway | $1,017,598 |
| Ducts ..................... | 337,476 |
| Feeders ................... | 116,354 |
| Horse track and roadway.. | 9,937 |
| Engineering, etc., during construction ............ | 271,360 |

### Cost to Produce New Tangible Property off Streets.

| | |
|---|---|
| Land ..................... | $2,954,390 |
| Buildings ................ | 1,955,315 |
| Tracks in buildings ....... | 86,937 |
| Engineering, etc., during construction ............ | 291,497 |

### Present Value of Same.

| | |
|---|---|
| Land ..................... | $2,954,390 |
| Buildings ................ | 1,689,883 |
| Tracks in buildings....... | 61,291 |
| Engineering, etc., during construction ........... | 284,507 |

### BLEECKER STREET RAILWAY.

### Cost to Produce New Tangible Property on Streets.

| | |
|---|---|
| Electric track and roadway | $306,287 |
| Ducts ..................... | 20,644 |
| Feeders ................... | 45,295 |
| Horse track and roadway.. | 72,503 |
| Engineering, etc., during construction ............ | 92,760 |

### Present Value of Same.

| | |
|---|---|
| Electric track and roadway | $229,121 |
| Ducts ..................... | 20,644 |
| Feeders ................... | 38,140 |
| Horse track and roadway.. | 36,044 |
| Engineering, etc........... | 65,348 |

No Property off Streets.

A final order may be entered in accordance herewith.