PEOPLE ex rel. NEW YORK RAILWAYS and TWELVE OTHER SEPARATE COMPANIES, Relators, *v.* STATE BOARD OF TAX COMMISSIONERS, Respondent, and CITY OF NEW YORK, Intervenor.

(Supreme Court, New York Special Term, September, 1917.)

Certiorari — to review special franchise assessments — street railways — no return allowed on theoretical depreciation fund — burden of proof — real property.

The franchises of the thirteen surface railroads which compose the New York City Railways system should be considered

as one entire system, and for the purposes of special franchise assessments the value should be determined by the net earnings rule.

Where on certiorari to review special franchise assessments of said railway system it appears that a certain power plant was discarded because the relator found it more economical to purchase power than to manufacture it, and that at the time of such discarding one-half of the stipulated life of the machinery had expired, an allowance for obsolescence for the remaining one-half should be allowed during the tax year in which the discarding actually occurred, and an allowance for physical depreciation to be determined by the straight line method, and no return should be allowed to relator upon the theoretical depreciation fund.

Where it is apparent that the interest on relator's daily bank balance should be included in income, it should be allowed a return on accounts receivable, cash on hand and prepaid insurance, the amount of such items to be determined from the average amount for the whole year, in the absence of proof that relator kept an amount of accounts receivable, cash on hand and prepaid insurance, other than required for the efficient conduct of its business.

The relator having shown what moneys and property are actually used in the conduct of its business, the burden is upon defendant to show that such an amount is more than is reasonably required for that purpose.

Relator having failed to show that the amount of a so-called city loan was actually used in the conduct of its business and the interest on the loan not having been included by relator in the gross income, no return will be allowed on said loan.

There should be excluded from the gross income and from the operating expenses of the entire system the income and expense arising from the operation of cars over the Williamsburg bridge.

All the real estate used in the operation of the roads included in relator's system should be included, even though it might be possible to obtain less expensive property for the same purpose.

CERTIORARI proceedings to review special franchise assessments.

James L. Quackenbush (Ralph Norton and J. J. K. Caskie, of counsel), for relators.

Egburt E. Woodbury, Attorney-General (Leonard J.,Obermeier, of counsel), for respondent, State Board of Tax Commissioners.

Lamar Hardy, corporation counsel (Addison B. Scoville, of counsel), for City of New York.

FINCH, J.  These are thirty-nine certiorari proceedings to review the special franchise assessments of each of the thirteen surface railroads which compose the New York City Railways system for each of the years, 1912, 1913 and 1914. Unquestionably, the franchises should be considered as one entire system, and the value should be determined by the net earnings rule. The stipulations of counsel have narrowed the issues to certain specific questions: *First.* What allowance should be made for depreciation? This question involves a determination of the proper allowance for physical depreciation and for obsolescence. Without attempting to define the term " obsolescence " generally, since it arises from causes widely divergent and the same rule may not apply throughout, the first instance of obsolescence with which we have here to deal is the discarding of the Ninety-sixth street power house machinery in August, 1915, because the relators found it more economical to purchase power than to manufacture it, since the invention of the turbine engine to replace the reciprocating type of engine, with which the Ninety-sixth street power plant was equipped, had decreased by one-half the cost of producing power. At the time of the discarding only one-half of the stipulated life of this machinery had expired, and allowance is claimed for the remaining half. As to the physical depreciation, the amount should be determined by the straight-line method. This method has been approved by the Court of Appeals as the proper method. *People ex rel. Manhattan R. Co. v.*

*Woodbury,* 203 N. Y. 231, 235, 236. The relators, however, should not be allowed any return upon the theoretical depreciation fund, since the straight-line method of estimating depreciation is adopted. If any moneys are actually accumulated for the purpose of restoring units which have suffered depreciation, they are included in the daily balance, upon which a return is allowed herein. As to the obsolescence of the Ninety-sixth street power plant, a question arises as to when this obsolescence should be allowed. It is evident that as soon as the invention of the turbine engine became generally known as a commercial article the value of the reciprocating engine was affected, so far as removing the same and selling it to others was concerned, but that so long as the use continued the plant produced, and would have produced for the whole of its life, exactly the result produced when first installed. The sale value to others of machinery like this when once installed is only an incident. The value for use is the value to be considered. The only reason for discarding is the desire to increase the net income by decreasing the cost. This results in larger franchise taxes to the state under the operation of the net earnings rule, and under the application of equitable principles (which, after all, are the immediate guiding principles in the imposition of franchise taxes) such loss, being one phase of obsolescence, should be allowed. This use value is not therefore affected by obsolescence until the discarding takes place, so that nothing should be allowed for obsolescence until the plant was actually discarded in August, 1915. In other words, in such a case no obsolescence should be allowed until the use ceased. Since obsolescence in a case such as here presented occurs at the time discarding takes place, it follows that the allowance for such obsolescence should be made at the time when the dis-

carding takes place. Relators seek to establish a rule by which a portion of such allowance may be spread over the years for which the taxes still remain unpaid (this result being possible here because of the refusal to pay the taxes and the resulting litigation), and hence to claim that one-third of the obsolescence should be allowed during the years 1913 and 1914. Such a rule, besides acting as an inducement for and putting a monetary premium on delay and litigation in the payment of taxes, would seem to be lacking in reason for its support. So, too, the attempt to spread the obsolescence over the future would be unsound, and the mere statement of its operation would seem to defeat the proposal. For example, if a going business should presently discard a portion of its plant and thus suffer a loss, to be consistent with this proposal it would only write off one-tenth of such loss during the succeeding year, and this would result in such business carrying as an asset for that year nine-tenths of an admitted loss, and so on in less degree for the remaining nine years. The obsolescence therefore should be allowed during the tax year in which the obsolescence occurred, since it must be allowed then or in the past or future. No allowance should be made for the alleged obsolescence of the ducts, rails or foundations, because the evidence does not sustain relators' contention that there has been any. Furthermore, the stipulations would seem to preclude such proof. Relators should be allowed a return on accounts receivable, cash on hand and prepaid insurance, it being, of course, apparent that the interest on the daily bank balance should be included in the income. The amount of the accounts receivable, cash on hand and prepaid insurance should not be taken merely as of the last day, but should be determined from the average amount for the whole year, in the absence of

evidence that the relators kept an amount of accounts receivable, cash on hand and prepaid insurance other than required for the efficient conduct of the business. It is true that the burden is upon the relators to show what moneys and property actually are used in the conduct of the business, but having done this, the burden is upon the defendant to show that such an amount is more than is reasonably required in the efficient conduct of the business. This burden the defendant has failed to sustain in regard to the accounts receivable, cash on hand and prepaid insurance. In regard to the so-called city loan, however, the relators failed to sustain the burden that this amount was actually used in the conduct of their business, and the interest on this loan was not included by the relators in the gross income, so that no return should be allowed upon such city loan, so far as this record goes. In other words, the pertinent inquiry always is, What does normally take place in the absence of fraud or mismanagement in the actual running of the business? If the average daily balance is taken, self-interest coincides with the interest of the taxing power, since the tax saved by a larger daily balance than the business economically requires would be but a small fraction of the profit to be made by the investment of the surplus. If, on the other hand, the amount on the last day is taken as the criterion, as urged by the relators, then relators might be tempted to accumulate a larger balance than the business actually required for the one day, since the amount of tax saved thereby for the whole year might much more than offset any possible income from the investment for that day. There should be excluded from the gross income and from the operating expenses of the entire system the income and expense arising from the operation of the cars over the Williamsburg bridge. *Matter of New York Railways*

*Co.,* 172 App. Div. 128. It is impossible to determine these exactly, but they may be sufficiently approximated by asuming that they are apportioned to the car mileage. All the real estate used in the operation of the roads should be included, even though it might be possible to obtain less expensive property for the same purpose. It does not appear that relators have unreasonably delayed in disposing of this real estate.

Ordered accordingly.