PEOPLE ex rel. BROOKLYN HEIGHTS R. CO. v. STATE BOARD OF
TAX COM'RS et al.

(Supreme Court, Appellate Division, Third Department.    September 28, 1911.)

1. Taxation (§ 376*)—Special Franchise—Assessments.

A holding company operated several railroads, and apportioned among them on the car mileage basis the cost of power furnished and other operating expenses. The arrangement was made in good faith, and there was nothing to show that it was unfair to any company. *Held*, that the adoption of the net earnings rule for the ascertainment of the value of the special franchise of one of the companies for purposes of assessment was not erroneous, though the rule produced no assessment on the franchise.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625–631; Dec. Dig. § 376.*]

2. Taxation (§ 376*)—Special Franchise—Assessments.

An allowance for keeping efficient the plant and machinery of an electric railway, and not for the purpose of avoiding taxation, may be made in valuing the special franchise for taxation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625–631; Dec. Dig. § 376.*]

Appeal from Special Term, Albany County.

Certiorari by the People, on the relation of the Brooklyn Heights Railroad Company as lessee of the Brooklyn City Railroad Company, against the State Board of Tax Commissioners of the State of New York and another to review a special franchise assessment. From an order of the Special Term (69 Misc. Rep. 646, 127 N. Y. Supp. 825) reducing the assessment for a year, the City of New York appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, SEWELL, BETTS, and HOUGHTON, JJ.

Archibald R. Watson, Corp. Counsel (Curtis A. Peters and Addison B. Scoville, of counsel), for appellant.

George D. Yeomans (John L. Wells, of counsel), for relator.

JOHN M. KELLOGG, J. The Special Term finds that the parties and referee proceeded upon the theory that the net earnings rule was the proper method of assessment in this case. The city now alleges that, because that rule produces no assessment for the intangible part of the special franchise, therefore it is an improper rule for this case, and some other rule should be adopted. The case discloses no reason as matter of fact why the net earnings rule does not equitably apply; and, as the case was tried upon that theory, the court will not give further attention to that matter.

[1] The object of an assessment is not necessarily to produce a tax upon the intangible rights, but is to determine what the special franchise is worth, and, if the basis of computation is right, it is quite immaterial for the purpose of fairness whether a tax on the intangible part of the franchise results or not. If there is no value, there is no tax. The assessing board and the courts cannot torture facts and conditions to produce a tax. The tax follows a fair and just val-

uation. The assessment for the tangible part of the franchise is not questioned; and it does not appear that an improper basis was adopted for determining the value of the intangible part of the franchise.

[2] It appears that the relator and several companies are controlled by a holding company, the Brooklyn Rapid Transit Company. The holding company furnished to the other companies power from its power house, and the several companies are managed by the general officers of the holding company, and certain other expenses of the several companies are paid by that company. By mutual agreement such expenses are borne by the operating companies upon a car mileage basis. It is not urged that an improper plan was arrived at between the companies in bad faith for the purpose of affecting taxation. This apparently could not be so; for, if such a plan were favorable to some of the companies, it would be unfavorable to others, and, in the end, the expenses ultimately falling upon the holding company, on account of its subsidiary companies, would be the same. The plan must therefore be considered as an agreement between the companies made in good faith, and there is no evidence to show that it is unfair or prejudicial to any company. By agreement certain service is paid for at a given price, and the court, for the purpose of taxation, will not question the adequacy of the consideration, unless the agreement is shown to be collusive or in bad faith. In fact, it is quite apparent that by paying for its power, supervision, and the other expenses in the manner in which it does the relator is saving considerable money on account of the various items going to make up such common expenses. The road of the relator in Queens county is through a more sparsely settled country than the roads in Brooklyn, contributing to the expenses of power and the other common expenses, and the traffic density is much less, and it would seem to be unjust to apportion these expenses among the roads according to the mileage of the roads. As a mere matter of theory, for the purpose of increasing its taxes, we cannot say that the relator is paying too much on account of these expenses, in the absence of evidence to the contrary.

Criticism is made that expenses are charged with a certain sum as up-keep of the property and a further sum for obsolescence. It is unnecessary to refine as to what charges may be called those for obsolescence and those for up-keep of plant. It is the right and duty of a public service corporation to create a fund from the current earnings to keep and make good the machinery, appliances, and such parts of its plant as from time and use require replacement. In the electrical field, it is just as sure that certain machinery now in use will be superseded by better machinery, and that the public service will require the better machinery as it is that the machinery will in time wear out. The creation and maintenance of a fund for the purpose of keeping good and efficient the plant and machinery of an electrical railway, if reasonable and made in good faith for that purpose, and not for the purpose of avoiding taxation, the court may well consider a step in the right direction. The name or manner of the division of the fund is immaterial. The question is, Is it made in good faith, and is it a reasonable fund to provide for the continued efficiency of the property? Earnings should provide for wear and obsolescence, and new

capital should be resorted to for additions, enlargements, and new property not already represented in capitalization. It does not appear that the amount set aside from earnings for the up-keep and obsolescence of the property is unreasonable.

We have considered the evidence carefully and also the able opinion of Mr. Justice Le Bœuf at the Special Term. The facts and conclusions he draws from them fully sustain the result reached.

The order is therefore affirmed, with costs to be paid by the appellant. All concur, BETTS, J., in result.