THE PEOPLE OF THE STATE OF NEW YORK ex rel. MANHATTAN RAILWAY COMPANY, Appellant, *v.* EGBURT E. WOODBURY et al., Constituting the State Board of Tax Commissioners, Respondents.

THE CITY OF NEW YORK, Respondent.

Tax — assessments upon special franchises — rule for ascertaining value of tangible property — method of ascertaining net earnings in assessment of special franchises — rate by which capitalization should be fixed.

1. In fixing the value of the relator's special franchises the court applied the net earnings rule to the evidence. *Held,* that in ascertaining the value of the relator's tangible property, upon which a return should be allowed, there should have been included the value of the relator's interest in the subway, or subservice conduits, through which its power and light cables pass, the cash and cash items on hand, and the cost of relator's easements.

2. The rule as to net earnings is to ascertain the gross earnings of the corporation and then deduct the operating expenses, together with the annual taxes paid. From the remainder there should also be deducted a fair and reasonable return on that portion of the capital of the corporation which is invested in tangible property, the result becoming the net earnings contributable to the special franchise; which, when capitalized at a certain fixed rate, becomes the

value of the tangible property of the special franchise. The question of the fair and reasonable return is one of fact under the control of the courts below and one which this court should not review.

3. To provide against unforeseen contingencies that may arise in the prosecution of the business of a corporation, which may result in the impairment of the net earnings, a gross sum should be deducted annually for the purposes of reconstruction, and the rate of capitalization to meet depreciation should be at least one per cent higher than the rate of income allowed. (*People ex rel. Jamaica Water Supply Co.* v. *State Board of Tax Commissioners*, 196 N. Y. 39, followed.)

*People ex rel. Manhattan Ry. Co.* v. *Woodbury*, 143 App. Div. 905, modified.

(Argued June 5, 1911; decided October 17, 1911.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 10, 1911, which affirmed an order of Special Term reducing an assessment for purposes of taxation against special franchises of the relator.

The facts, so far as material, are stated in the opinion.

*Richard Reid Rogers, Charles F. Kingsley, Ralph Norton* and *James L. Quackenbush* for appellant. The amounts paid for rights to maintain an elevated structure, acquired by the relator and its predecessors from the abutting property owners, are not a part of the value of the special franchise. (*People ex rel. Panama R. R. Co.* v. *Comrs.*, 104 N. Y. 240; *People ex rel. Manhattan Ry. Co.* v. *Barker*, 146 N. Y. 304; *People ex rel. D., L. & W. R. R. Co.* v. *Clapp*, 152 N. Y. 490; *People ex rel. Manhattan Ry. Co.* v. *Barker*, 152 N. Y. 417; *People ex rel. M. S. Ry. Co.* v. *Tax Comrs.*, 174 N. Y. 417; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Gourley*, 198 N. Y. 486; *People ex rel. Retsof Mining Co.* v. *Priest*, 75 App. Div. 131; affd., 175 N. Y. 511; *People ex rel. Abraham* v. *Perley,* 67 Misc. Rep. 471; *People ex rel. N. Y. El. R. R. Co.* v. *Comrs. of Taxes*, 82 N. Y. 459.) The per-

centages of return proved on behalf of the relator are properly applicable. (*People ex rel. T. A. R. R. Co.* v. *Tax Comrs.*, 136 App. Div. 155; *Mayor, etc.*, v. *M. Ry. Co.*, 143 N. Y. 1.) Relator is entitled to a return upon "subways" and "cash" and "cash items." (*C. G. Co.* v. *City of New York*, 157 Fed. Rep. 849.) A sum equal to the average actual annual depreciation of the plant and property proved should be deducted. (Beale & Wyman on R. R. Rates, § 430; *People ex rel. B. H. R. R. Co.* v. *State*, 69 Misc. Rep. 646.) The assessments reviewed are erroneous by reason of inequality. (*People ex rel. J. W. S. Co.* v. *Tax Comrs.*, 196 N. Y. 39.)

*Archibald R. Watson, Corporation Counsel* (*Curtis A. Peters* and *Addison B. Scoville* of counsel), for respondents. The value of the easements owned by the relator were properly included in the valuation of the tangible property forming part of its special franchise. (*People ex rel. M. R. Co.* v. *Barker*, 165 N. Y. 305; *People ex rel. Poor* v. *O'Donnell*, 139 App. Div. 83; 200 N. Y. 519; *People ex rel. Topping* v. *Purdy*, 128 N. Y. Supp. 569.) No allowance should be made from annual earnings to provide for a fund to substitute modern for obsolete property. (*S. V. W. Works* v. *City of San Francisco*, 124 Fed. Rep. 574; *Cotting* v. *K. C. S. Y. Co.*, 82 Fed. Rep. 839.) The trial court was justified in refusing to equalize the assessment against the relator's special franchises in the borough of the Bronx. (*People ex rel. Dexter* v. *Palmer*, 86 Hun, 513.)

GRAY, J. In this proceeding the relator, the Manhattan Railway Company, in the city of New York, has sought to review a determination of the state board of tax commissioners assessing its special franchises in the borough of Manhattan at $75,000,000, and in the borough of the Bronx at $3,500,000. The trial court has reduced the assessment in the borough of Manhattan to $66,661,930.05 and has confirmed the assessment in the

borough of the Bronx. In fixing the values of the relator's special franchises, the court applied the net earnings rule to the evidence, as it was laid down in the case of *People ex rel. Jamaica Water Supply Company* v. *State Board of Tax Commissioners* (196 N. Y. 39). The Appellate Division has affirmed the order of the Special Term.

With respect to all the items, except those which will be referred to, I am of the opinion that the determination below was right. I think, in ascertaining the value of the relator's tangible property, upon which a return of six per cent. should be allowed, that there should have been included the value of the relator's interest in the subway, or subservice conduits, through which its power and light cables pass. While it is true that this subway property, or structure, was owned by another corporation, the Consolidated Telegraph and Electrical Subway Company, nevertheless, the relator had invested in it the sum of $936,879. This investment was essential to the operation of the relator's road and there is no good reason why it should not be entitled to a return upon it.

I think, also, that there should have been included in the tangible property the sum of $537,139, consisting in cash and other cash items on hand. This item may, properly, be considered as a part of the relator's working capital, which it was entitled, in the prudent management of its business, to keep on hand. Whether or not it was, in fact, essential to the operation of the railroad is not material; but it was, nevertheless, an item of its property, which it may fairly claim to have considered with the rest of its tangible property, upon which the return should be estimated.

The inclusion of these two items in the relator's tangible property, of subways and of cash, would result, by the methods of computation adopted, in reducing the value of the special franchises in the borough of Manhattan from $66,661,930.05 to the sum of $65,350,060.26. In

the borough of the Bronx the reduction would be from $4,907,652 to $4,805,399. This difference, however, in the case of the borough of the Bronx, is not material and does not affect the determination; inasmuch as it was, very properly, held, as the sum fixed by the tax commissioners at $3,500,000 was less than the full value of the special franchise, that the relator was not aggrieved and that no allowance should be made for equalization.

Whether the rate of return to be allowed to the relator upon its tangible property, or whether the rate at which the net income should be capitalized, should be six per cent., as determined below, was a question of fact decided upon, concededly, conflicting evidence and is one with which, therefore, this court should not interfere. · In the *Jamaica Water Supply Company's Case*, (196 N. Y. 39), the character of the plaintiff's business affected the question of the rate of capitalization of net income; a consideration which, I think, does not obtain in this case.

I think that the cost of the easements was properly included in ascertaining the value of the relator's tangible property. The structures in the street, upon the acquisition of those easements, became lawful as to the abutting property owners. They, then, became appurtenant to the railroad property and, necessarily, enhanced its value.

The courts below determined that the relator was entitled to make annual depreciation charges, amounting in the case of the borough of Manhattan to the sum of $360,613.65 and in the case of the borough of the Bronx to the sum of $37,435.67, for the purpose of creating a fund to provide for the depreciation of its various properties; upon which interest at four per cent., compounded, would produce a sum, at the termination of the ascertained physical life of the several classes of property, equal to the cost of the particular property. While I am, personally, of the opinion that the creation of such an amortization fund furnishes the best rule for adoption in

236   People ex rel. Manhattan Ry. Co. *v.* Woodbury.

[203 N. Y.]   ·   Opinion, per Haight, J.   °   [Oct.,

.such a case as this, in working out the value of special franchises, the majority of my brethren entertain a different view.   They think that the annual allowance for depreciation should be computed by dividing the values of the various kinds of tangible property by the number of years of their respective estimated physical lives and that will be the opinion of the court.

The orders of the Special Term and Appellate Division must, therefore, be modified and the proceeding is remitted to the Special Term for further action in accordance with this opinion; without costs as against either party.

Haight, J.   I concur in the opinion of Gray, J., except as to the questions hereinafter discussed.

In this case the courts below adopted the net earnings rule, so called, in determining the value of the relator's special franchise.   No question has been raised upon this review as to the propriety of adopting that rule in this case.   The rule has been approved by this court in cases in which the business of the corporation has been conducted honestly and economically and where the net earnings have not been dissipated by extravagance and mismanagement.   Therefore, in reviewing the case it becomes our duty to see whether the rule has been properly followed and the result reached is just and fair both to the public and the relator.   The rule, in brief, is to ascertain the gross earnings of the corporation and then deduct the operating expenses, together with the annual taxes paid. From the remainder there should also be deducted a fair and reasonable return on that portion of · the capital of the corporation which is invested in tangible property, the result becoming the net earnings contributable to the special franchise, which, when capitalized at a rate which I shall hereafter consider, becomes the value of the intangible property of the special franchise.

The courts below have allowed the relator six per cent on the value of its tangible property as a fair and reason-

able return for the investment.    The relator claims that
the rate should have been higher; that the business
engaged in, of constructing and operating an elevated
road, involved a great hazard, but has resulted in a great
public benefit, and that investors in such an enterprise
ought to be allowed a greater income therefrom than the
ordinary rate of interest allowed by statute upon the loan
of money.    It may be, as claimed, that the confining of
the income to the statutory rate of interest will operate
to prevent persons having money to loan from investing
in new and dangerous enterprises.    But the question of
the fair and reasonable return, we regard as one of fact
under the control of the courts below and one which this
court should not review.    We, therefore, cannot interfere
with the determination made upon this branch of the case.

The courts below have also held that the net earnings
should be capitalized upon the basis of six per cent, the
same percentage that was allowed for income on the
tangible property.    In this determination I think the
court failed to follow the net earnings rule.    That rule is
not a question of fact but a plan devised for the purpose
of ascertaining the value of intangible property, which
has met the approval of this court in cases of this char-
acter, for the reason that it seemed just and fair, and
perhaps as furnishing as safe a rule as any that has thus
far been devised.    Prominent authorities in discussing
this method of valuing special franchises have suggested
that the rate of capitalization should be at least one
per cent higher than the rate of income allowed.    The
purpose of this is to provide against unforeseen con-
tingencies that may arise in the prosecution of the busi-
ness of the corporation, such as unusual storms, floods,
fires, explosions and accidents, which may result in the
impairment of net earnings, and cannot be foreseen and
estimated in advance.    This question was considered by
this court in the case of *People ex rel. Jamaica Water
Supply Co.* v. *State Board of Tax Commissioners* (196

N. Y. 39), and we then reached the conclusion that such a rule was reasonable and fair to the parties and should be followed, and we consequently reversed the determination of the Appellate Division, which fixed the rate of capitalization at the same percentage allowed for income and affirmed the rate adopted by the referee. This was done, not upon the ground that it involved any question of fact, but because it was part of the plan or rule which we approved for the determination of a just result between the parties. It, therefore, seems to me that the rule should not be departed from in this case, and that the capitalization should be based upon a seven per cent rate.

In the *Jamaica Water Supply Case* (*supra*) we held that there should be an annual deduction made out of gross earnings in order to meet the general deterioration of the property and provide for its replacement. WILLARD BARTLETT, J., in delivering the opinion of the court, says: "We suppose that judicial notice may be taken of the fact that in the conduct of many industrial enterprises there is a constant deterioration of the plant which is not made good by ordinary repairs which, of course, operates continually to lessen the value of the tangible property which it affects. The amount of this depreciation differs in different enterprises, but the annual rate is usually capable of estimate and proof by skilled witnesses. No corporation would be regarded as well conducted which did not make some provision for the necessity of ultimately replacing the property thus suffering deterioration; and we cannot see why an allowance for this purpose should not be made out of the gross earnings in order to ascertain the true earning capacity." (p. 57.)

In the case of *People ex rel. Third Avenue Railroad Co.* v. *State Board of Tax Commissioners* (136 App. Div. 155), KELLOGG, J., in delivering the opinion of the Appellate Division, after referring to our decision in the *Jamaica* case, says that "a public service cor-

poration, with reference to its property which will become worthless by use and must be replaced, is entitled to set aside each year from its earnings a reasonable sum to provide for its replacement. This is outside of the ordinary annual expenses for maintenance, renewals and repairs." (p. 158.) This case was affirmed in this court without opinion in 198 N. Y. 608. The Special Term in this case, however, adopted a plan of amortization upon which an annual sum was authorized to be set apart as a sinking fund, which, by compounding the interest thereon for a period equal to the life of the structure, tracks, engines, machinery and rolling stock, would at the end of that period create a fund sufficient to replace the property. The difficulty with such holding is that railroad corporations do not reconstruct their railroads and rolling stock in that way. In order to afford proper protection to the public they are required to maintain a high state of efficiency both in roadbed and rolling stock. The relator's railroad has been in existence already for about thirty years and some portion of its property has already suffered from decay and use to such an extent that portions thereof have to be reconstructed and made new each year. Old ties have to be removed and replaced with new ones; old rails that have become worn and battered have to be removed and their places supplied with new rails and so the work of reconstruction progresses from year to year. It is not the waiting forty or sixty years to reconstruct, during which time the amount set apart as a sinking fund may be doubled many times over by compounding the interest, but it is the annual expenditure for reconstruction which is to be paid for at the time that the construction is made. To illustrate: Suppose the average life of the tangible property of a railroad, outside of the land itself, to be sixty years and the cost of reconstruction to be sixty million dollars, it would follow that one million dollars would have to be used each year in reconstruction and that amount would have

to be annually used for that purpose, but under the plan adopted in this case, instead of deducting from the gross earnings the amount necessarily expended for that purpose a small fraction of that sum, viz., $4,200, only is allowed to be deducted, a sum which, with the interest compounded for the next sixty years would amount to a million dollars. Under such a plan the company would be practically prohibited from annually constructing a portion of its road and thus prevented from keeping it in that state of efficiency which the public demands. Of course the necessities of reconstruction vary from year to year; some years it may be greater than others, but the assessors each year can easily ascertain the sum required for that purpose. I think, therefore, that we should adhere to the rule sanctioned in the *Jamaica* case, and that a gross sum should be deducted annually for the purposes of reconstruction.

I am aware that some corporations have in the past met with heavy losses by reason of their machinery becoming obsolete. This is especially true with reference to those corporations using electricity for power and other purposes. Such use is the result of modern inventions which have been improved from year to year, thus rendering obsolete and practically useless expensive dynamos and machinery, but there is a difficulty in making any estimate as to the amount of depreciation in the assessable value of tangible property which may result from future invention, and, therefore, this species of property should be left to be considered when such depreciation actually occurs.

CULLEN, Ch. J., VANN, WERNER, HISCOCK and COLLIN, JJ., concur with GRAY, J., except as to rate of interest at which the net income should be capitalized to ascertain value of special franchise. All agree with HAIGHT, J., on that question, except GRAY and COLLIN, JJ.; COLLIN, J., concurring in opinion of GRAY, J.

Orders modified, etc.