The People of the State of New York ex rel. The Third Avenue Railroad Company, Respondent and Appellant, *v.* State Board of Tax Commissioners, Appellant and Respondent. The City of New York, Intervenor, Appellant and Respondent.

The People of the State of New York ex rel. James N. Wallace et al., Respondents and Appellants, *v.* State Board of Tax Commissioners, Appellant and Respondent. The City of New York, Intervenor, Appellant and Respondent.

The People of the State of New York ex rel. Kingsbridge Railway Company, Respondent and Appellant, *v.* State Board of Tax Commissioners, Appellant and Respondent. The City of New York, Intervenor, Appellant and Respondent.

Tax — special franchise tax — net earnings rule and application thereof — rate upon earning value of property and business is a question of fact — determination of amount to be deducted for charges and expenses of developing and conducting business.

1. In ordinary cases, the net earnings rule is the best practical method that the taxing officers and the courts have as yet been able to evolve in order to arrive at the valuation of a special franchise. The term, as so used, means what is left of the gross earnings produced by the property after the legitimate costs, expenses and deductions connected with and arising from its use are paid, and when the rule is invoked it is the duty of the courts to see that it is consistently and correctly applied to the facts of each case.

2. It is proper under this rule, *first*, to exclude from the income or earnings of a street railway company the rental which it received from cars rented to subsidiary companies; *second*, to include in operating expenses payments by such a corporation for percentages of gross earnings and for car licenses; *third*, salary paid to a receiver is properly included in such expenses; *fourth*, the sum spent for the ordinary annual expenses for maintenance, renewals and repairs of equipment, machinery, appliances and structures should be included in the annual operating expenses, and the sum

spent for replacements thereof should not be so included, but should be deemed included or covered in an allowance for depreciation.

3. The rate upon the value of the property used constituting a fair return is inherently a question of fact to be decided upon the circumstances, conditions, facts and opinions disclosed by the evidence. The nature of the business, whether it be established or experimental, the risks natural or proven attending it, are some of the many varying circumstances which may enter into the determination of a rate of return which must as a rule be left to the good judgment of the tribunals which review the facts as proven.

4. Allowance of overhead charges, counting expenses for legal and technical advice, of obtaining consents of public bodies and individuals, completing the working organization and essentials preliminary to the beginning of the construction work, interest and taxes during construction and promoters' and financiers' profits involve questions of fact.

5. Further questions briefly considered and the conclusions of the Appellate Division thereon (Opinion, Laughlin, J., 157 App. Div. 731) approved.

*People ex rel. Third Ave. R. R. Co.* v. *Tax Comrs.*, 157 App. Div. 731, affirmed.

(Argued April 16, 1914; decided September 29, 1914.)

CROSS-APPEALS, in each of the above-entitled proceedings, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 31, 1913, which reversed an order of Special Term confirming a special franchise tax assessment by the state board of tax commissioners and reduced said assessment.

The state board assessed the special franchise of the Third Avenue Company at $7,920,000 and the special franchise of the Kingsbridge Company at $759,000. Each company was granted upon its petition a writ of certiorari for the review of its assessment, to which the state board made a return. James N. Wallace and others, as a purchasing committee of the property of the Third Avenue Company, were likewise granted a writ for the review of the assessment of its franchise, to which the state board made a return. Under permissive orders, the city of New York intervened in each case. The three cases were tried

474  People ex rel. Third Ave. R. R. Co. v. Tax Comrs.

[212 N. Y.]                    Statement of case.                    [Sept.,

together at the Special Term and the assessments were there confirmed. The trial court made a decision, consisting of findings of fact and conclusions of law, in the two cases reviewing the assessment relating to the Third Avenue Company and a decision of like nature in the Kingsbridge Company case. The Third Avenue Company owned the capital stock and operated as its own the railroad and special franchise of the Kingsbridge Company, but knew throughout the operation the sum of the fares collected on it.

The trial court adopted the net earnings rule. It ascertained the sum of the gross earnings or income, deducted from it the sum of the operating expenses, thus ascertaining the sum of the income less operating expenses, from which was further deducted the sum of other expenses, such as taxes and rentals necessarily paid, thus ascertaining what was designated the sum of the final net income from both tangible and intangible property. From this final sum was deducted a sum equal to six per cent of the value of the tangible property as the reasonable earnings or income therefrom, and from the remainder was deducted a sum designated "depreciation allowance" and the remainder thus produced was deemed to represent the net earnings attributable to the intangible parts of the special franchises and capitalized at six per cent to produce the sum of their assessable value for the purpose of taxation, which was apportioned between the two companies in proportion to the sum of the fares collected upon their respective roads. To each sum thus apportioned was added the sum of the value of the tangible property of the respective companies producing thereby the taxable value of the special franchise of each, which after equalization exceeded the values found by the state board.

The Appellate Division orders, made upon the appeals of the relators, reversed the orders of the trial court on the law and the facts and made many new findings of

fact and modifications of the original findings and new conclusions of law, following the decision in *Bonnette* v. *Molloy* (209 N. Y. 167). The able and comprehensive opinion of the Appellate Division, written by Mr. Justice LAUGHLIN, is reported in 157 App. Div. 731.

*Frank L. Polk, Corporation Counsel* (*Curtis A. Peters* and *Addison B. Scoville* of counsel), for City of New York, appellant and respondent. *Thomas Carmody, Attorney-General* (*William A. McQuade* of counsel), for State Board of Tax Commissioners, appellant and respondent. The Appellate Division erred in excluding from the income of the relator the rental which it received from certain of its cars rented to other companies in the Third Avenue system. (*People ex rel. Queens Co. Water Co.* v. *Tax Comrs.*, 157 App. Div. 165.) The Appellate Division erred in including in operating expenses certain payments to the city of New York for percentages of gross earnings and for car license fees amounting to $10,942.12. (*Heerwagen* v. *C. R. R. Co.*, 179 N. Y. 99.) If payments in the nature of a tax are to be included in operating expenses then only the sum of $5,560 should have been so included. (*People ex rel. J. W. S. Co.* v. *Tax Comrs.*, 196 N. Y. 57; 197 N.Y. 33.) The Appellate Division erred in including in operating expenses certain expenditures for the renewal and replacement of its property. (*People ex rel. M. Ry. Co.* v. *Woodbury*, 203 N. Y. 231.) The Appellate Division properly excluded from consideration certain real estate not used by the relator but rented out for commercial and other purposes. (*People ex rel. T. A. R. R. Co.* v. *Tax Comrs.*, 136 App. Div. 155; 198 N. Y. 608.) The Appellate Division properly refused to allow a return upon the so-called development expenses or non-physical costs. (*People ex rel. N. Y., O. & W. R. Co.* v. *Shaw*, 143 App. Div. 811; 202 N. Y. 556; *Josh* v. *Marshall*, 33 App. Div. 77; *Dept. of Health* v. *City R. P. I. Co.*, 86 N. Y. 18; *Porter* v. *Waring*, 69 N. Y. 250; *People ex rel. B. &*

*L. E. Traction Co.* v. *State Board,* 209 N. Y. 496.) The
Appellate Division properly allowed a return on the pres-
ent value of relator's property instead of on the cost to
reproduce, new, said property. (*People ex rel. J. W. S.
Co.* v. *Tax Comrs.,* 196 N. Y. 39; *Wilcox* v. *C. Gas Co.,*
212 U. S. 19; *City of Knoxville* v. *Knoxville Water Co.,*
212 U. S. 1; *San Diego Land Co.* v. *National City,* 174
U. S. 739; *People ex rel. T. A. R. R. Co.* v. *State Board,*
136 App. Div. 155.) The Special Term and the Appellate
Division properly fixed the rate of return on tangible
property at six per cent. (*People ex rel. Manhattan Ry.
Co.* v. *Woodbury,* 203 N. Y. 231.) The Appellate Divi-
sion acted properly in holding that the Kingsbridge Rail-
way Company was subject to an assessment against its
intangible special franchise. (*People ex rel. Manhattan
Ry. Co.* v. *Woodbury,* 203 N. Y. 231.)

*Joseph P. Cotton* and *George S. Franklin* for relators,
respondents and appellants. Under the special circum-
stances of these cases, because the state board did not
adopt any reasonable theory in making the assessments,
the assessments must be tested by the net earnings
rule. (*People ex rel. J. W. S. Co.* v. *State Board,* 196
N. Y. 39; *People ex rel. H. & M. R. R. Co.* v. *State
Board,* 69 Misc. Rep. 1; 203 N. Y. 119; *People ex rel.
Queens Co. Water Co.* v. *State Board,* 67 Misc. Rep.
490; 143 App. Div. 618; 202 N. Y. 619; *People ex
rel. Bryan* v. *State Board,* 67 Misc. Rep. 474; 143
App. Div. 950; *People ex rel. Brooklyn Heights Rail-
road Co.* v. *State Board,* 69 Misc. Rep. 646; 146 App.
Div. 372; 204 N. Y. 648; *People ex rel. N. Y. C. & H.
R. R. R. Co.* v. *Priest,* 206 N. Y. 274.) It is only in the
absence of evidence as to what the reasonable rate should
be that the court will necessarily adopt the six per cent
rate. When evidence upon this point is introduced the
court will adopt the rate shown by that evidence to be
the reasonable rate. (*People ex rel. J. W. S. Co.* v.

*State Board,* 196 N. Y. 39; *People ex rel. Kings Co. Lighting Co.* v. *Willcox,* 156 App. Div. 603.) The Appellate Division erroneously refused to allow relators any return upon their development expenses. (*People ex rel. K. C. Lighting Co.* v. *Willcox,* 210 N. Y. 479; *People ex rel. T. A. R. R. Co.* v. *P. S. Comm.,* 145 App. Div. 318; 203 N. Y. 299.) The Appellate Division was clearly right in determining what taxes should be deducted from relators' gross incomes in order to ascertain the net incomes attributable to the special franchises. (*Heerwagen* v. *C. St. Ry. Co.,* 90 App. Div. 275; 179 N. Y. 99; *Matter of New York City Interborough Railway Co.* v. *Moynahan,* 148 App. Div. 908; *Matter of Manhattan Railroad Co.* v. *Austen,* 133 App. Div. 890; 197 N. Y. 581; *People ex rel. J. W. S. Co.* v. *Tax Comrs.,* 196 N. Y. 39.) The Appellate Division erred in not permitting these relators to have the full benefit of the depreciation allowances to which they were entitled by the express provisions of the stipulations. (*People ex rel. T. A. R. R. Co.* v. *Tax Comrs.,* 136 App. Div. 155; 198 N. Y. 608; *People ex rel. J. W. S. Co.* v. *Tax Comrs.,* 196 N. Y. 39; *People ex rel. D. & H. Co.* v. *Stevens,* 197 N. Y. 1.)

COLLIN, J. The assertions and arguments of the state board and the city of New York under their appeal to this court will be first stated and considered.

1. The conclusions of the Appellate Division leading to the reduction of the assessments are erroneous because they resulted from the application of the net earnings rule. The argument is: the assessments of the state board are presumed to be correct. It was incumbent upon the relators attacking them to establish some error on the part of the state board in principle or fact. Such error is not proven by showing the assessments excessive by the application of a particular rule unless that rule were one which the state board was bound to accept. In these cases the net earnings rule is not one which the

state board was bound to follow and the results of its application do not establish error.

The state board in the returns to the writs of certiorari disclaimed the adoption of any formulated or intelligible method of reaching their valuations. They state: " the board has availed itself of all tests of value within its reach and every fact and all information which, in its judgment, has any bearing upon such value and no certain or fixed rule or method has been adopted in making said valuation. * * * It would be impossible at this time for the members of the board to more definitely state the *modus operandi* or mental operation which prompted the board in arriving at the valuation as fixed. It was the consideration of all these conditions and elements that fixed the determination as reached. It is quite impossible, at this time, to state which of these different elements, theories or methods most influenced the minds of the individual members of the board or to what extent each test was used. The amount of the valuation was finally fixed and agreed upon as the combined judgment of the board, irrespective of the individual methods of arriving at it." The defendants did not at the trial further enlighten the relators or the court as to the grounds or method of valuation.

The assessments do not conclusively establish their validity and exemption from error. They do not in and of themselves afford proof of the method or methods used or that they were legally and correctly made. The relators have the right to have them reviewed by the courts. Neither they nor the courts can adopt or review the undisclosed and concededly indescribable methods followed by the state board, because they cannot know the mental processes or conclusions through which the members reached the valuations. Hence, they can neither reject nor approve them. Under such a condition, in which it was impossible to know and review the test or measure of the valuations adopted by the state board, the relators

were free to measure them by any rule which is legal and suitable to produce a fair valuation for the purpose of taxation and to show by it that the assessments imposed by the state board were excessive. The defendants were free to sustain them by the processes by which they were made or by any suitable or legal rule or method. The trial court adopted without opposing argument, if not with acquiescence, on the part of the defendants, the net earnings rule which, in the ordinary cases possessing no unusual or peculiar characteristics, has repeatedly had the approval of this court (*People ex rel. Jamaica Water Supply Co.* v. *State Board of Tax Commissioners,* 196 N. Y. 39; *People ex rel. Manhattan Ry. Co.* v. *Woodbury,* 203 N. Y. 231. *People ex rel. Hudson & Manh. R. R. Co. State Board of* v. *Tax Commissioners,* 203 N. Y. 119; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Priest,* 206 N. Y. 274; *People ex rel. Third Avenue R. R. Co.* v. *State Board of Tax Commissioners,* 136 App. Div. 155; affd., 198 N. Y. 608; *People ex rel. Brooklyn Heights R. R. Co.* v. *State Board of Tax Commissioners,* 146 App. Div. 372; affd., 204 N. Y. 648), and of which Chief Judge CULLEN said: " It is true that no statute prescribes the net earnings rule as the method by which the value of a special franchise is to be computed, nor is there any decision of the courts that this method is to be exclusively adopted. It is also true that that method of computation is not universally applicable. Nevertheless, in ordinary cases it is the best practical method that the taxing officers and the courts have as yet been able to evolve." (*People ex rel. Hudson & Manh. R. R. Co.* v. *Woodbury,* 203 N. Y. 119, 130.) The present are ordinary cases and the relators properly invoked the net earnings rule in undertaking to affirmatively show, as they were bound to, that the assessments were excessive. It is our duty to see whether the rule has been consistently and correctly applied to the facts. The purpose sought is the true and correct valuation of

the particular special franchises in question for the purpose of taxation.

, 2. The Appellate Division erred, under the net earnings rule, in excluding from the income or earnings of the relator, the Third Avenue Company, the rental which it received from certain of its cars rented to subsidiary companies in the Third Avenue system. Paragraph "Seventh" of the opinion of the Appellate Division relates to this claim. We approve the statements and the reasoning and conclusions there given.

3. The Appellate Division erred, likewise, in including in operating expenses certain payments by the Third Avenue Company for percentages of gross earnings and for car license fees. Paragraph "Eleventh" of the opinion of the Appellate Division relates to such assertion. We approve the statements, reasoning and conclusion given there. A clear appreciation of the ultimate result sought refutes the assertion. The special franchises are to be assessed at their full and actual value for the purpose of taxation. The state board or the court must ascertain and state the sum of that value. The application of the net earnings rule is a method to that end evolved by those under the duty of reaching legal valuations of special franchises. It rests upon the fact that the net income from the use of the franchise to the owner and operator of it is a test and arbiter of its actual value — a fact not peculiar to a special franchise as distinguished from real estate. Manifestly the term "net earnings," as used in the rule, means what is left of the gross earnings produced by the property after the legitimate costs, expenses and deductions connected with and arising from its use are paid. The percentages and license fees are costs or charges connected with the use of the property. Section 48 of the Tax Law has no part in or relation to the valuation of the franchise. It comes into operation after the assessment is made and reduces the sum of the tax based thereon.

4. The Appellate Division erred, likewise, in including in operating expenses the salary paid to the receiver of the property of the relators for services during the year 1909. Paragraph "Fourteenth" of the opinion of the Appellate Division relates to this assertion. We approve the statements and reasoning and conclusion given there.

5. The Appellate Division erred, likewise, in including in operating expenses the sum of $164,745.84 expended for the maintenance and renewal of property. The relators assert, on the other hand, that that court erred in not including in operating expenses an additional sum of $41,990.05 expended, as they argue, for the same purposes. The Special Term refused to allow as a part of the operating expenses any portion of the aggregate of the two sums, namely, $206,735.89. The Appellate Division found as facts that during the year 1909 the Third Avenue Company spent the sum of $164,745.84 for ordinary maintenance and repairs, including ordinary renewals and replacements of parts of equipment, machinery, appliances and structures; and for renewals and replacements upon relator's property used in connection with the operation of relator's special franchise the sum of $41,990.05, which the relator charged to operating expenses, but which under the circumstances might be assumed to represent expenditures for extraordinary repairs to or for new equipment, machinery, appliances and construction, and a deduction should not be allowed therefor as operating expenses; that it was stipulated or conceded on the trial that during the year 1909 "$336,695.99 was a reasonable depreciation allowance to cover the amount of the annual depreciation and obsolescence of relator's property, used in connection with the operation of relator's special franchise which relator is entitled to deduct from relator's said gross income from transportation of $2,367,346 in order to ascertain relator's net income or net earnings." The conclusion of the Appellate Division, in brief, was that the sum spent for the ordinary annual

31

expenses for maintenance, renewals and repairs of equipment, machinery, appliances and structures should be included in the annual operating expenses, and the sum spent for replacements thereof should not be so included, but should be deemed included or covered in the stipulated allowance for depreciation. Pargraph "Sixteenth" of the opinion of the Appellate Division relates to the matter under consideration. The argument of the defendants is that the depreciation fund must be held to cover all expenditures for renewals and replacements of the various parts or units of the relator's tangible property, otherwise a double allowance (that of the operating expenses and that of the depreciation fund) would be made for the same depreciation. The argument of the relators is that the assumption by the Appellate Division that the $41,990.05 were spent for new equipment, machinery, appliances and construction is directly contrary to the facts; that the evidence shows that whatever was spent by the relators during the year and charged to operating expenses was simply the ordinary annual expenses for maintenance, renewals and repairs. In this the relators err. The finding of the Appellate Division is not arbitrary and without any evidence whatsoever in support of it, and must be deemed conclusive as to the fact.

We turn now to the argument of the defendants. The finding of the Appellate Division, of which I have before spoken, was properly made, and is "that during said year 1909 $336,695.99 was a reasonable depreciation allowance to cover the amount of the annual depreciation and obsolescence of relator's property, used in connection with the operation of relator's special franchise, which relator is entitled to deduct from relator's said gross income from transportation of $2,367,346 in order to ascertain relator's net income or net earnings." The meaning of the words "allowance to cover the amount of the annual depreciation and obsolescence" is indefinite.

It may mean an allowance to cover the entire deprecia-
tion in the property producing the earnings from trans-
portation; that is, the deterioration through use and break-
age of the renewable and repairable parts of the units or
individual machines, implements or appliances of pro-
duction, as well as that deterioration which cannot be pre-
vented by maintenance nor offset by repair, or arising
from the inefficiency or uselessness of the units caused
by changes in the methods or machinery, implements or
appliances for accomplishing results, necessitating the
replacement of the old units with new, or it may mean the
latter deterioration only. Of course the courts must effect
the intention of the parties if expressed in the stipulation
The evidence does not aid, either directly or through infer-
ence or circumstance, in ascertaining that intention. At
the time the stipulation was made the courts had clearly
indicated their understanding of the meaning of those
words when unaffected by context or facts. In *People
ex rel. Jamaica Water Supply Company* v. *State Board
of Tax Comrs.* (196 N. Y. 39, 57), Judge (now Chief Judge)
WILLARD BARTLETT, writing for the court, said: "In
the deduction made by the referee for expenses there is
an item of $3,789.37 under the head of maintenance, and
it is clear that this does not include a proportionate allow-
ance on account of the general depreciation of the plant
which will ultimately require replacement. We suppose
that judicial notice may be taken of the fact that in the
conduct of many industrial enterprises there is a constant
deterioration of the plant which is not made good by
ordinary repairs, which, of course, operates continually
to lessen the value of the tangible property which it
affects. The amount of this depreciation differs in dif-
ferent enterprises, but the annual rate is usually capable
of estimate and proof by skilled witnesses." In *People
ex rel. Manhattan Ry. Co.* v. *Woodbury* (203 N. Y. 231,
236) we held "that the annual allowance for deprecia-
tion should be computed by dividing the values of the

various kinds of tangible property by the number of years of their respective estimated physical lives." Obviously the "lives," as there treated, are the periods of time through which the "various kinds of tangible property" will respectively, with ordinary and adequate annual renewals and repairs, continue efficient in and commercially adaptable to their respective processes and functions. In *People ex rel. Third Ave. R. R. Co.* v. *State Board of Tax Comrs.* (136 App. Div. 155, 158; affirmed, 198 N. Y. 608) Mr. Justice KELLOGG, writing for the court, said: "The *Jamaica Water Supply Company* case establishes that a public service corporation, with reference to its property which will become worthless by use and must be replaced, is entitled to set aside each year from its earnings a reasonable sum to provide for its replacement. This is outside of the ordinary annual expenses for maintenance, renewals and repairs." The stipulation of the parties was made with full knowledge of those interpretations of the term "depreciation" and, presumptively, used it with the meaning they gave it. We approve the conclusions reached by the Appellate Division in the matter under consideration.

The relators under their appeal assert:

1. The courts below erred in refusing to allow a rate of return to the relators upon the value of the tangible property greater than six per centum.

A finding of fact is that six per centum is the reasonable return to which capital is entitled in the city of New York in enterprises similar to that in which the relator is engaged, and in applying the net earnings rule to the evidence it is the rate of return to which the relator is entitled. In *People ex rel. Manhattan Ry. Co.* v. *Woodbury* (203 N. Y. 231, 235) Judge GRAY, writing for the court, said: "Whether the rate of return to be allowed to the relator upon its tangible property, or whether the rate at which the net income should be capitalized, should be six per cent, as determined below, was a question of

fact decided upon, concededly, conflicting evidence and is
one with which, therefore, this court should not inter-
fere." Judge HAIGHT in a concurring opinion said: "But
the question of the fair and reasonable return, we regard
as one of fact under the control of the courts below and
one which this court should not review." (p. 237.) The
relators assert that the fair and reasonable rate of return
is a question of fact which must be determined upon the
evidence and the finding of fact constitutes reversible
error, because not only is there no evidence to support it,
but the only evidence in the records is to the effect that
the relators are entitled to at least eight per centum. An
engineer competent and qualified to form an opinion
testified, as a witness for the relators, that in his opinion
capital in the enterprise would demand at least eight
per centum, and another testified that he "should con-
sider that at least eight per centum would be the return
required for capital and it might run to nine or possibly
ten per centum." The witnesses were not testifying to
facts known to them through uncommon skill, learning or
experience, but to their opinions. Opinion testimony,
even if uncontradicted, was subject to the exercise by the
trial court of its independent judgment. While it is,
speaking generally, true that a jury has not the right,
arbitrarily, to ignore or discredit the testimony of unim-
peached disinterested witnesses, so far as they testify to
facts, and that willful disregard of such testimony will be
ground for a new trial, no such obligation attaches to
witnesses who testify merely to their opinion; and the
jury may deal with it as they please, giving it credence
or not as their experience or general knowledge of the
subject may dictate. (*The Conqueror*, 166 U. S. 110.)
The rate upon the value of the property used constituting
a fair return is inherently a question of fact to be decided
upon the circumstances, conditions, facts and opinions
disclosed by the evidence. The nature of the business,
whether it be established or experimental, the risks

natural or proven attending it, are some of the many varying circumstances which may enter into the determination of a rate of return which must as a rule be left to the good judgment of the tribunals which review the facts as proven.

2. The Appellate Division erred in refusing to allow a return to the relators upon the development expenses, or "overhead charges," consisting of expenses for legal and technical advice, of obtaining consents of public bodies and individuals, completing the working organization and essentials preliminary to the beginning of the construction work, interest and taxes during construction and promoters' and financiers' profits. This assertion involves a question of fact. The taxation of a special franchise is, under statutory provisions, at its full and actual value. The search of the state board is for a correct valuation for the purpose of taxation of the particular special franchise in question, not for the full and actual sum invested in the corporate property nor a fair return thereon. The sum of the value and that of the cost or investment may, obviously, differ through an appreciable range. The net earnings rule is one of the approved methods of getting at the taxable value of the special franchise. It is based upon the practical and commonly recognized principle that the earning capacity or power of an industrial property indicates its value. The sum of the earnings or income indicate, however, the value of the property only which produces it. In the application of the net earnings rule, the value of the tangible property used in producing those earnings upon which a fair and reasonable return is allowed should be the full and actual value of all the property essential to the operation of the enterprise or plant. But what that property is and its value are questions of fact. In the present case, the value of the tangible property was proven at the Special Term by evidence of the witnesses of relators of the cost of reproduction and of accrued

depreciation.   Such evidence was not disputed.   Another witness of relators testified as an expert that there should be added to the valuation thus produced, on account of the development expenses as above enumerated, twenty and five one-hundredths per centum thereof. The trial court, by a finding of fact, held such testimony inadequate to increase the reproduction value as proven by the relators.   The record or the brief of relators does not reveal any manner in which the expenses of obtaining the consents of public bodies or individual owners, or certificates of public necessity and convenience, of organization or of promoters' or financiers' profits add to the present cost of reproducing the tangible property or take part in producing the earnings attributable to the tangible property under the net earnings rule.   We approve of the decision of the Appellate Division concerning this matter which is considered in paragraph ninth of its opinion.

3. The Appellate Division erred in excluding from the tangible property, upon the value of which the return was allowed, certain real estate owned by the relator, the Third Avenue Railroad Company.   The tenth paragraph of the opinion of the Appellate Division relates to this claim.   We approve of the decisions contained in such paragraph.

4. The Appellate Division erred in refusing to deduct from the gross earnings of the year 1909 the sums of taxes and assessments for local improvements levied and due in years prior to 1909.   This claim is considered in paragraph "Twelfth" of the opinion of the Appellate Division and we approve of the reasoning and conclusio. therein stated.

The order in each case should be affirmed, without costs to any party.

WERNER, HISCOCK, CHASE, CUDDEBACK and HOGAN, JJ., concur; WILLARD BARTLETT, Ch. J., not voting.

Orders affirmed.