(89 South. 244)

No. 24409.

## BATON ROUGE ELECTRIC CO. v. BOARD OF STATE AFFAIRS et al.

(June 15, 1921.)

*(Syllabus by Editorial Staff.)*

1. **Taxation** ⊚⊐376(1)—**Value of public utility franchise not to be increased by amount added for privilege of using city streets.**

In assessment of franchise of public utility corporations occupying city streets, the board of state affairs is not justified in adding to the earning value of the franchise an additional assessment for the privilege of occupying the streets or for carrying on the business of the corporation, since the value of the franchise is to be determined by earning capacity.

2. **Taxation** ⊚⊐376(1)—**Cost of replacements deducted from annual earnings in assessments of public utility franchise.**

A public utility corporation, the franchise of which is assessed according to the net earnings rule, is entitled to have deducted from its annual earnings the estimated annual cost of replacements or renewals of its tangible property used in the business.

3. **Taxation** ⊚⊐376(1)—**Net earnings rule of ascertaining value of corporate franchise stated.**

In ascertaining the value of a public utility franchise according to the net earnings rule, the annual operating expenses are deducted from the gross annual earnings to ascertain the net annual earnings of the franchise as well as the tangible property, and from the net earnings so ascertained the fair and reasonable annual return on the capital invested in tangible property is deducted to ascertain the net annual earnings of the franchise; the net annual earnings of the franchise so ascertained, capitalized at the same fair and reasonable rate allowed as the return on the capital invested in the tangible property, gives the fair valuation of the franchise.

4. **Appeal and error** ⊚⊐176—**Public utility corporation is bound by estimate adopted in petition.**

In public utility corporation suit to reduce assessment of franchise, the corporation is bound on appeal by the estimate adopted and suggested by it in its petition.

5. **Taxation** ⊚⊐376(1)—**Same annual return should be allowed on corporate franchise in assessment thereof as was allowed on corporation's tangible property.**

In assessment of the franchise of a public utility corporation according to net earnings rule, the same fair and reasonable annual return should be allowed on the corporate franchise as was allowed on the tangible property of the corporation.

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Suit by the Baton Rouge Electric Company against the Board of State Affairs and others. To review the judgment rendered, the defendants appeal, and the plaintiff answers the appeal, praying for a further reduction. Amended and affirmed.

A. V. Coco, Atty. Gen., A. J. Thomas, of Baton Rouge (W. Carruth Jones, of Baton Rouge, and H. P. Sneed, of New Orleans, of counsel), for appellants.

Laycock & Beale, of Baton Rouge (William E. Tucker, of Boston, Mass., of counsel), for appellee.

O'NIELL, J. The object of this suit was to reduce the assessment of plaintiff's franchise, as a public utility corporation, from $452,530, as fixed by the board of state affairs, to $67,375. The district court gave judgment reducing the assessment to $89,833; and the defendants, board of state affairs, police jury, assessor, and tax collector, have appealed. Answering the appeal, plaintiff prays for a further reduction as follows: (1) By deducting from the annual earnings of the corporation 4 per cent. of the value of its tangible property, for depreciation, instead of deducting (what the court deducted) the average actual cost per annum of replacements for the last five years, $19,962.38; and (2) by capitalizing the net annual earnings of the franchise at the same rate which was allowed as a return on the

value of the tangible property, 8 per cent. instead of 6 per cent., the rate at which the board and the court capitalized it.

The board assessed the tangible property at $912,446, the correctness or fairness of which assessment is not disputed. In computing the value of the franchise, the board divided it into two franchises, calling them, for convenience, the primary and the secondary franchise. The so-called primary franchise was declared to be the privilege enjoyed by the corporation of occupying the streets with the street railway and equipment and gas mains, and of conducting the business of operating street cars and the electric light and gas works. The value of the so-called primary franchise was fixed, arbitrarily, at $30,000. The value of the so-called secondary franchise was ascertained by what the board deemed to be the net earnings rule. But the board refused to deduct from the average annual earnings the average annual cost of replacements or renewals or upkeep of the tangible property. The average annual earnings, as shown by the statement rendered for the last five years, amounted to $98,347, without deducting the average annual cost of replacements or upkeep of the tangible property. The board allowed 8 per cent. as a fair income on the value of the tangible property; that is, 8 per cent. of $912,446, or $72,995, which the board deducted from the annual earnings, $98,347, leaving as the average net earnings of the franchise $25,352, which, capitalized at 6 per cent., gave, as the value of the so-called secondary franchise, $422,530, to which the board added the valuation put upon the so-called primary franchise, $30,000, and thus assessed the so-called "total franchise" at $452,530.

The district judge made two corrections in the assessment. He struck out the arbitrary assessment of the so-called primary franchise, $30,000; and he deducted from the

149 LA.—13

average annual earnings the average annual cost of replacements or upkeep of the tangible property, which average cost, according to the statement furnished for the last five years, amounted to $19,962. Subtracting that sum from the apparent average earnings, $98,347, left the average net earnings $78,385, from which was deducted, as a fair allowance for return on the investment in tangible property, valued at $912,446, the 8 per cent. allowed by the board of state affairs, being $72,995, thus leaving as the annual net earnings of the franchise $5,390, which, capitalized at 6 per cent., gave $89,833 as the value of the franchise.

[1] We agree with the district judge that there is no justification for adding to the earning value of the franchise an additional assessment for the privilege of occupying the streets with railway tracks or for carrying on the business of the corporation. It is argued on behalf of appellants that this privilege or franchise had a commercial value before the owner of it demonstrated its earning value, and that it must yet have a value, for sale, without regard for what it is earning. It matters not what valuation might have been put upon the franchise before it had demonstrated its earning capacity; its value is determined now by its earning capacity. If it were for sale, its value would be governed by its earning capacity, and nothing more.

[2, 3] We agree also with the district judge's conclusion that, in applying the net earnings rule for assessing a public utility franchise, the corporation is entitled to have deducted from its annual earnings the estimated annual cost of replacements or renewals of its tangible property used in the business. That appears to be recognized in every jurisdiction where the net earnings rule of assessment has been applied. The rule is an established formula devised for ascertaining the value of a corporate fran-

chise. It may be stated concisely thus: From the gross annual earnings of the corporation deduct the annual operating expenses, to ascertain the net annual earnings of all of the property, the franchise as well as the tangible property, of the corporation. From the net earnings of all the property thus ascertained deduct a fair and reasonable annual return on the capital invested in tangible property, to ascertain the net annual earnings of the franchise. The net annual earnings of the franchise thus ascertained, capitalized at the same fair and reasonable rate allowed as a return on the capital invested in tangible property, will give the same fair valuation of the franchise that was put upon the tangible property of the corporation. In the annual operating expenses that are to be deducted from the gross annual earnings of the corporation there must be included, of course, the annual cost of maintenance, upkeep, replacements, or renewals of the tangible property of the corporation. The proprietor of any business in which he has an investment in machinery employed, who does not keep an account of the wearing out of his machinery, and of the cost of maintaining it always in the state of usefulness in which it was at the beginning, is very apt to mistake the way to bankruptcy for the way to prosperity. No one would invest in the capital stock of a public utility corporation that did not keep an accurate account of, and charge off, the expense of maintaining the tangible property of the corporation always in as good condition of value and usefulness as it was in the beginning. It is too plain to admit of much discussion that, if the cost of replacements, renewals, maintenance, and upkeep of the tangible property of the corporation were not included in the operating expenses that are to be deducted from the gross earnings in the application of the net earnings rule for ascer-

taining the value of a franchise, the result would represent something more than the value of the franchise.

[4] Appellee contends, in answer to the appeal, that the annual cost of maintenance, which must be included in the operating expenses that are deducted from the gross annual earnings of the corporation, should include, not merely the actual expenditures for repairs, replacements or renewals which have been made, but also the loss which is constantly going on by the wearing out of the tangible property, and by its gradually becoming obsolete and unfit for service. The argument appears to be well supported by reason and authority; but it presents only a moot question here, because the contention was not made in plaintiff's petition to the district court. We therefore decline to express an opinion upon the question. The allegation and prayer of the petition in that respect was that, from the $98,347 average annual earnings of the corporation should be deducted $19,962, being the average annual cost of maintenance or replacements for the last five years, and that the net average annual earnings should therefore be fixed at $78,385. It is now contended by appellee that the average annual cost of maintenance or replacements of tangible property should be determined by dividing the values of the various kinds of tangible property by the estimated number of years of their life or usefulness, respectively. That appears to be the method generally employed in estimating the annual loss or expense allowed for what is called, somewhat indifferently, cost of maintenance, replacements, renewals, repairs, upkeep, deterioration, obsolescence, and wearing out of the tangible property used in a business. But that annual loss or expense can only be estimated after all. Plaintiff adopted as a proper estimate the average annual expenditures of the last five years, without suggesting in the petition to

the district court any other method of striking an average; and we see no reason why plaintiff should not be bound by the estimate adopted and suggested by plaintiff.

[5] The other complaint made by appellee in answer to the appeal is well founded; that is, that the same fair and reasonable annual return should be allowed on the corporate franchise as was allowed on the tangible property of the corporation. In other words, the net annual earnings of the franchise should be capitalized at the same rate at which a fair and reasonable earning was allowed on the investment in tangible property. In fact, in some jurisdictions, particularly in New York, the net annual earnings of the corporate franchise are capitalized at a rate 1 per cent. higher than the rate at which a fair and reasonable return is allowed on the investment in tangible property. See People ex rel. Jamaica Water Supply Co. v. State Board of Tax Commissioners, 196 N. Y. 39, 89 N. E. 581; People ex rel. Manhattan Railway Co. v. Woodberry, 203 N. Y. 231, 96 N. E. 420; Third Avenue Railroad Case, 212 N. Y. 472, 106 N. E. 325; Id., 157 App. Div. 731, 142 N. Y. Supp. 986. The United States Supreme Court, however, has adopted and approved the rule of capitalizing the net earnings of the franchise of a public utility corporation at the same rate that is allowed as a fair and reasonable return on the tangible property. See Willcox v. Consolidated Gas Co., 212 U. S. 19, 29 Sup. Ct. 192, 53 L. Ed. 382, 48 L. R. A. (N. S.) 1134, 15 Ann. Cas. 1034. In that case Judge Hough, who delivered the opinion for the circuit court, gave reasons for his individual opinion that the net earnings of the franchise should be capitalized at a lower rate than was allowed as a fair and reasonable return on the investment in tangible property, but he admitted that he was constrained to follow the decisions to the contrary. See Consolidated Gas Co. v. New York (C. C.) 157 Fed. 849.

In applying the net earnings rule, of course, the higher the rate allowed as a fair and reasonable return on the investment in tangible property, the less will be the resulting annual net earnings of the franchise; and, the higher the rate at which the annual net earnings of the franchise are capitalized, the less will be the resulting valuation of the franchise. It is universally recognized, in the assessment of public utilities, that the risk of the investment justifies the allowance of a higher rate as a fair and reasonable return on the investment in the property of the corporation than could be expected as a return on a well-secured bond. It is conceded by the defendants in this case that 8 per cent. is not more than a fair and reasonable rate of return on the tangible property of the corporation. Fundamentally and on principle the same rate of return should be allowed on the franchise of the corporation. The tangible property and the franchise are so interrelated and dependent upon each other that it is impracticable to calculate, in fact impossible to imagine, a distinction between their earning capacity. The value of the franchise is really more precarious than that of the tangible property, for it has no intrinsic value—no value except what its owner has made it worth by demonstrating its earning capacity. It appears to us that the net earnings rule would be fundamentally wrong if the average annual net earnings of the franchise were not to be capitalized at the same rate at which a fair and reasonable return is allowed on the investment in the tangible property of the corporation. Our conclusion, therefore, is that the net earnings of the franchise in this case should be capitalized at 8 per cent., the rate which defendants concede to be a fair and reasonable return to be allowed upon the investment in the tangible property of the corporation.

Deducting $19,962, as the average annual cost of replacements and renewals of the tangible property of the corporation, from $98,347, the average annual earnings, leaves $78,385 as the average annual net earnings of both the tangible property and the franchise. Substracting therefrom $72,995, being 8 per cent. of the $912,446 valuation of the tangible property, as a fair and reasonable return thereon, leaves $5,390 as the net average annual earnings of the franchise, which, capitalized at 8 per cent., gives $68,375 as the value of the franchise.

The judgment appealed from is amended by reducing the assessment of plaintiff's franchise from $89,833 to $67,375, thereby reducing the total assessment from $1,002,279 to $979,821. As thus amended, the judgment is affirmed.